IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

**FILED**

MAR 0 5 2019

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKL
BY _____N.V._____,DEPUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| -vs- | ) No. CR 19-065SLP |
| JEFFREY SCOTT TERRY, | ) Violations: 18 U.S.C. § 1347 |
| Defendant. | )         18 U.S.C. § 982(a)(7) |
| | )         21 U.S.C. § 853(p) |
| |         28 U.S.C. § 2461(c) |

**I N D I C T M E N T**

The Federal Grand Jury charges:

At all times relevant to this Indictment:

**Introduction to Medicaid**

1.     The Medicaid Program ("Medicaid") was a cooperative federal and state program that provided federal and state funds to pay for health care benefits for children and other individuals whose household incomes were insufficient to meet the costs of necessary medical expenses.  Medicaid was administered federally by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the U.S. Department of Health and Human Services ("HHS").   In the state of Oklahoma, Medicaid was administered as "SoonerCare" by the Oklahoma Health Care Authority ("OHCA"), a state governmental agency responsible for receiving, reviewing, and paying SoonerCare claims submitted by approved health care providers.  SoonerCare was jointly funded with state

and federal funds. SoonerCare was a "health care benefit program" as defined by 18 U.S.C. § 24(b).

2.     Individuals who qualified for Medicaid benefits were referred to as SoonerCare "members." Each member was assigned a unique member identification number.

3.     In order to be approved to receive SoonerCare reimbursement in Oklahoma, a health care provider must have first entered into a Provider Agreement with the OHCA and have received a provider number. Under the Provider Agreement, the health care provider certified that all information submitted on claims would be accurate and complete, assured that the OHCA's requirements would be met, and assured compliance with all applicable federal and state laws and regulations.

4.     Among the specific medical services and products provided by SoonerCare were reimbursements to pharmacies for the provision of prescription drugs. Generally, SoonerCare covered these costs if, among other requirements, they were medically necessary and ordered by a physician.

5.     The OHCA paid approved pharmacy providers for drugs dispensed by way of the claim process. Pharmacy providers submitted claims to the OHCA that included its SoonerCare provider number, the identity of the prescribing physician, the name and identification information of the SoonerCare member to whom the drug was dispensed, the date the drug was dispensed, and the National Drug Code ("NDC") for the specific drug

2

dispensed.   Pharmacy providers could elect to submit claims for reimbursement electronically either directly or through a billing company.

6.     The amount of reimbursement that pharmacies received from the OHCA was determined with reference to uniform rates for the NDC dispensed.   Payments to a pharmacy were deposited electronically by the State Treasurer into the bank account designated by the pharmacy owner.

### Introduction to Medicare

7.     The Medicare Program ("Medicare") was a federal health care benefit program, affecting commerce, that provided federal funds to pay for health care benefits for certain individuals, primarily those who were over the age of 65, the blind, and the disabled.   Medicare was administered by CMS.   Medicare was a "health care benefit program" as defined by 18 U.S.C. § 24(b).

8.     Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries."   Each beneficiary was assigned a unique health insurance claim number.

9.     Only individuals and entities that were officially approved to participate in Medicare were permitted to submit claims to Medicare for reimbursement of the health care benefits, items, and services they furnished to beneficiaries.   In order to participate in Medicare, health care providers were required to submit applications in which they agreed to comply with all Medicare-related laws and regulations.   If Medicare approved a provider's application, Medicare assigned the provider a unique National Provider

Identifier ("NPI"), which was used for the processing and payment of claims. Pharmacies and other health care providers approved to participate in Medicare were referred to as Medicare "providers."

10.    Medicare Part D subsidized the costs of prescription drugs for Medicare beneficiaries if the drugs were medically necessary and dispensed upon a valid prescription. Part D benefits were administered by private insurance plans that were reimbursed by Medicare through CMS.

11.    Beneficiaries could obtain Part D benefits in two different ways: they could join a Prescription Drug Plan that covered only prescription drugs, or they could join a Medicare Advantage Plan that covered both prescription drugs and medical services (collectively referred to as "Medicare Part D plans").

12.    Typically, Medicare beneficiaries enrolled in a Medicare Part D plan would fill their prescriptions at a pharmacy, utilizing their Medicare Part D plan coverage to pay for the drugs. At the point of sale, the pharmacy would electronically submit or cause the submission of the prescription information as a claim for reimbursement to the Medicare Part D plan for payment under the beneficiary's identification number. Payments to a pharmacy were deposited electronically into a bank account designated by the pharmacy owner.

4

## The Defendant

13.   **JEFFREY SCOTT TERRY** was a resident of the Western District of Oklahoma.  He lived and worked in Mangum, Oklahoma.  He was a pharmacist licensed in the state of Oklahoma.

14.   On or about May 13, 2015, **TERRY** incorporated The Parents Investment Corporation.

15.   On or about August 21, 2015, **TERRY**, on behalf of The Parents Investment Corporation, doing business as Bratton Drug, entered into a Provider Agreement with the OHCA as a pharmacy.  Bratton Drug's place of business was listed as 109 S. Oklahoma in Mangum, Oklahoma.  Under the SoonerCare Provider Agreement, Bratton Drug, a retail pharmacy, received a SoonerCare provider number and was eligible to receive reimbursements from the OHCA for providing prescription drugs and pharmaceutical products to SoonerCare members.

16.   Bratton Drug was an approved Medicare provider.  Accordingly, **TERRY** was permitted to submit claims to Medicare Part D plans for reimbursement of the drugs that had been distributed and dispensed through Bratton Drug to patients who were Medicare beneficiaries.

17.   **TERRY** used a customizable pharmacy software product to operate Bratton Drug.  The software offered a means of sorting and tracking incoming prescriptions, capturing and storing customer signatures and prescription histories, updating inventory

records, communicating directly with drug wholesalers, printing prescription labels, and submitting claims for payment to SoonerCare, Medicare, and other insurance companies.

18.     Prescribers could issue or transmit prescriptions for their patients in four formats: paper, telephone, facsimile, and electronic ("e-script").  When prescriptions were presented to Bratton Drug for filling, **TERRY** or his employees would upload the prescription information into the pharmacy software.  Once the prescription information was entered into the software and a pharmacist set out to fill the prescription, it generated and printed a label for the pharmacist to place on the bottle for dispensing the prescribed medication.  The software recorded and tracked the customer name, prescribing physician, prescription issue and fill dates, prescribed drug and strength (NDC), and dosing instructions.

19.     Generating and printing a prescription label immediately triggered a claim submission for the drug to the customer's insurance company, SoonerCare, or Medicare.

## COUNTS 1-40

### (Health Care Fraud, 18 U.S.C. § 1347)

20.     The Federal Grand Jury re-alleges and incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

### The Scheme to Defraud

21.     Beginning at least by August 25, 2015, and continuing through approximately September 29, 2018, in the Western District of Oklahoma, **TERRY** devised

6

a scheme and artifice to defraud SoonerCare and Medicare and to obtain money from SoonerCare and Medicare by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Scheme and Artifice

22.    It was the purpose of the scheme and artifice for **TERRY** to unlawfully enrich himself through the submission of false and fraudulent claims to SoonerCare and Medicare for drugs that had not actually been prescribed and/or had not been dispensed to patients.

## Manner and Means of the Scheme to Defraud

23.    It was part of the scheme and artifice to defraud that **TERRY** entered prescriptions into the pharmacy software for drugs that had not actually been prescribed by health care providers to their patients and/or that **TERRY** did not intend to dispense and never, in fact, dispensed to the patients.

24.    When **TERRY** entered the false and fraudulent prescriptions into the pharmacy software, the program generated a prescription label. This action, in turn, caused immediate false claim submissions to SoonerCare and Medicare.

25.    Relying on **TERRY's** fraudulent claims, SoonerCare reimbursed **TERRY**, through Bratton Drug, for drugs that were never prescribed and/or dispensed to SoonerCare members, in the approximate amount of $338,481.81, for dispense dates from on or about

7

February 8, 2016, through on or about September 29, 2018.

26.     Relying on **TERRY's** fraudulent claims, Medicare reimbursed **TERRY**, through Bratton Drug, for drugs that were never prescribed and/or dispensed to Medicare beneficiaries, in the approximate amount of $753,334.13, for dispense dates from on or about August 25, 2015, through on or about September 13, 2018.

### Executions of the Scheme and Artifice

27.     On or about the dates specified as to each count below, in the Western District of Oklahoma,

---------------------------------- **JEFFREY SCOTT TERRY** ------------------------------------

knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud SoonerCare and Medicare, health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain money from SoonerCare and Medicare by means of materially false and fraudulent pretenses, representations, and promises, all in connection with the delivery of and payment for health care benefits, items, and services.  In particular, **TERRY**, through Bratton Drug, submitted and caused to be submitted the following false and fraudulent claims for reimbursement to SoonerCare and Medicare on or about the dates listed below, when in truth and in fact, as **TERRY** knew, the claims were for drugs that had not been prescribed and/or had not been dispensed to the named customer:

8

| Count | Patient / Program | Purported Prescriber | Drug | Claim Date | Program Loss |
|---|---|---|---|---|---|
| 1 | P.B., Medicare | K.M. | RESTASIS | 5/2/2018 | $1,545.16 |
| 2 | M.B., Medicare | M.K. | HUMIRA PEN | 1/5/2018 | $5,064.21 |
| 3 | G.C., Medicare | B.W. | RESTASIS | 7/12/2017 | $1,452.24 |
| 4 | T.C., Medicare | K.M. | RESTASIS | 8/14/2017 | $1,422.16 |
| 5 | A.C., Medicare | A.H. | TIAGABINE HYDROCHLORIDE | 2/15/2016 | $1,807.22 |
| 6 | D.C., Medicare | D.H. | METFORMIN HCL ER | 12/13/2016 | $9,003.55 |
| 7 | C.C., Medicare | K.M. | RESTASIS | 3/24/2018 | $1,573.70 |
| 8 | T.L.C., Medicare | A.S. | RESTASIS | 2/19/2018 | $1,414.55 |
| 9 | R.D., Medicare | K.M. | RESTASIS | 9/2/2018 | $1,569.05 |
| 10 | T.F., Medicare | K.M. | RESTASIS | 6/5/2017 | $1,422.13 |
| 11 | G.F., Medicare | S.I. | ADVAIR DISKUS | 5/14/2018 | $1,186.85 |
| 12 | S.F., Medicare | S.I. | ADVAIR DISKUS | 9/13/2018 | $1,563.45 |
| 13 | C.G., SoonerCare | D.S. | INVEGA SUSTENNA | 3/28/2018 | $1,617.93 |
| 14 | V.G., Medicare | K.M. | RESTASIS | 1/20/2017 | $1,422.13 |
| 15 | B.H., Medicare | K.M. | RESTASIS | 3/28/2018 | $1,581.76 |
| 16 | G.H., SoonerCare | S.I. | COMBIVENT RESPIMAT | 2/10/2016 | $311.87 |
| 17 | G.G.H., Medicare | K.M. | RESTASIS | 2/3/2016 | $1,301.17 |
| 18 | M.H., Medicare | D.H. | COMBIVENT RESPIMAT | 8/25/2015 | $304.36 |

| Count | Patient / Program | Purported Prescriber | Drug | Claim Date | Program Loss |
|---|---|---|---|---|---|
| 19 | S.H., Medicare | K.M. | RESTASIS | 4/2/2018 | $1,536.86 |
| 20 | K.J., Medicare | K.M. | RESTASIS | 12/21/2015 | $1,204.34 |
| 21 | R.J., Medicare | C.C. | METFORMIN HCL ER | 5/4/2016 | $4,304.53 |
| 22 | N.K., Medicare | J.J. | SIMPONI | 11/24/2017 | $4,224.43 |
| 23 | P.K., Medicare | P.B. | METFORMIN HCL ER | 2/12/2017 | $16,081.11 |
| 24 | V.L., SoonerCare | S.P. | URSODIOL | 4/8/2017 | $2,126.72 |
| 25 | R.L., Medicare | K.M. | RESTASIS | 8/3/2018 | $1,541.46 |
| 26 | C.L., Medicare | S.I. | ADVAIR DISKUS | 3/10/2016 | $1,342.05 |
| 27 | V.M., Medicare | S.I. | COMBIVENT RESPIMAT | 7/10/2017 | $1,054.70 |
| 28 | T.M., Medicare | S.I. | ADVAIR DISKUS | 6/1/2018 | $1,586.39 |
| 29 | T.L.M., Medicare | S.I. | ADVAIR DISKUS | 8/27/2018 | $1,571.80 |
| 30 | R.N., Medicare | S.I. | ADVAIR DISKUS | 7/27/2016 | $1,345.65 |
| 31 | W.R., Medicare | W.C. | ADVAIR DISKUS | 3/7/2018 | $1,568.10 |
| 32 | C.R., Medicare | G.S. | RISPERDAL CONSTA | 9/1/2018 | $1,834.32 |
| 33 | R.R., Medicare | K.M. | RESTASIS | 10/18/2017 | $1,452.24 |
| 34 | P.S., Medicare | K.M. | RESTASIS | 7/3/2017 | $1,424.33 |
| 35 | D.A.S., Medicare | D.H. | LEVEMIR FLEXTOUCH | 6/30/2016 | $1,233.76 |
| 36 | D.S., Medicare | D.H. | LATUDA | 4/24/2017 | $1,095.64 |

| Count | Patient / Program | Purported Prescriber | Drug | Claim Date | Program Loss |
|-------|-------------------|---------------------|------|-----------|--------------|
| 37 | J.S., Medicare | J.Z. | METFORMIN HCL ER | 7/7/2016 | $18,005.85 |
| 38 | D.V., Medicare | B.W. | RESTASIS | 9/30/2017 | $1,469.84 |
| 39 | H.W., SoonerCare | M.G. | MEPHYTON | 8/27/2018 | $5,585.47 |
| 40 | B.W., SoonerCare | D.H. | EPIPEN JR 2-PAK | 5/2/2018 | $594.85 |

All in violation of Title 18, United States Code, Section 1347.

### Forfeiture

The allegations contained in this Indictment are hereby re-alleged and incorporated for the purpose of alleging forfeiture.

Upon conviction of any of the offenses alleged in Counts 1 through 40 of this Indictment, Defendant **JEFFREY SCOTT TERRY** shall forfeit to the United States any property real or personal, constituting, or derived from any proceeds obtained, directly or indirectly from gross proceeds traceable to the commission of the offense, including but not limited to:

1. a money judgment representing the proceeds obtained as a result of the offense;

2. the real property located at 321 S. Robinson Avenue, Mangum, Greer County, Oklahoma 73554-461;

11

3.  the real property described as NE/4 of 10-5N-22W Greer County, OK 154.9 acres
    MOL, located at E CR 1440 (154.9 ACRES) 10-5-22 NE4 LESS BEG SELNE4;
    THENCE N89-11-40W ALONG THE S. LINE A DIST OF 50.00' TO A PT ON
    THE W. PRESENT LINE US HWY 283 ROW; THENCE N01-08-23E A DIST
    OF 330.15'; THENCE N15-33-34W A DIST OF 104.40'; THENCE N01-08-23E
    A DIST OF 625.00'; THENCE N07-23-27W A DIST OF 101.12' THENCE N01-
    08-23E A DIST OF 1479.59' TO A PT ON THE N. LINE; THENCE S89-09-31E
    A DIST OF 95.00' TO A PT ON THE E. LINE OF NE4; THENCE S01-08-23W
    ALONG E. LINE A DIST OF 2634.95' TO POB. CONT 5.1 ACRES +/-; and

4.  2016 Dodge Challenger R/T, registered owner: Jeffrey Terry, VIN:
    2C3CDZBT0GH301200.

Pursuant to Title 21, United States Code, Section 853(p), as adopted by Title 28,
United States Code, Section 2461(c), Defendant shall forfeit substitute property, up to the
value of the property described above if, by any act or omission of Defendant, the property
described above, or any portion thereof, cannot be located upon the exercise of due
diligence; has been transferred or sold to, or deposited with, a third person; has been placed
beyond the jurisdiction of the Court; has been substantially diminished in value; or has
been commingled with other property that cannot be subdivided without difficulty.

All in accordance with Title 18, United States Code, Section 982(a)(7), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

ROBERT J. TROESTER
First Assistant United States Attorney

LORY DEWEY
Special Assistant U.S. Attorney

AMANDA MAXFIELD GREEN
Assistant U.S. Attorney